With the attorneys who are going to argue the case, step up and let us know who you are. Your Honor, my name is Stephen Muslin. I'll be arguing on behalf of plaintiff appellate. Mr. Muslin. Good morning. Julie Tischer on behalf of the defendant, Dr. Mark Cavalenes. Ms. Tischer. Tom Baker on behalf of Rush Oak Park Hospital. I've agreed to give the defense counsel as much of the defense time as she needs. Once. In other words, if she takes it all, you're not going to say anything. If there's something you feel that should be said on your behalf or your client's behalf, Mr. Baker, we will certainly listen to you. Okay, thank you. Okay. Mr. Muslin, I think 15 minutes and you can save off from that any portion you wish for a response. Thank you. Your Honors, this is a very, actually, two-point appeal, and I believe the issues are really simple. The first issue is whether or not Justice McWilliams, I mean Judge McWilliams, erred when she fired certain testimony from our expert, Dr. Krieger. And I believe it's, I mean, I practiced under 220 and I practiced under 213, and I don't believe to this moment that 213 requires a verbatim recitation of every word that a doctor is going to say. I believe the idea behind 213 is simple. Well, what's your notion of a logical corollary? Well, I believe that in this case we're even beyond a logical corollary, but I clearly believe that in this case our interrogatory, if I could just get my glasses for a second, answers said that Dr. Krieger will opine that on February 15th, Dr. Kavalinas put in a plate, a narrow plate, into Ms. Wilborn, and that on March 15th, 2002, in the absence of any evidence of a catastrophic event, that plate failed. Those are his opinions, and the basis of his opinions are contained in there. Logical corollary is what he said and what was barred. He has never seen a broad, the issue was whether it was a broad or narrow plate, he has never seen a broad plate fail within one month of implantation. It's clear that that was an expressed opinion. February 15th to March 15th is one month. He said that absent a catastrophic event, he had never seen one fail, and his testimony, which was barred, was that he had never seen a broad plate fail within one month of implantation. There was no surprise here. During the deposition, counsel for Dr. Kavalinas started down the road of that specific question and then backed off, and perhaps we should have finished it up, but we believe that it was contained within our opinions, because not only is the deposition an opinion, but the written 213Fs are the opinions. And I believe Judge McWilliams, and she kept saying, show me where it says that, show me where it says that, and we kept saying it says it in our written 213F3s, and although it doesn't contain the specific wording, it's clearly within the opinion and his basis. I mean, there's only a one-month period between February 15th implantation and March 15th when it broke, and I've certainly, and one of his basis is he's never seen it break, and then when he goes to testify to that, it's barred. What again is in your response or the interrogatory that you refer to? It says, the response is, Dr. Krieger is expected to offer the following opinions and conclusions relating to this matter. One, that on February 13th, X-rays taken at Rush Oak Park Hospital revealed the right femoral shaft fracture. Two, that on February 15th, 2002, Dr. Mark Cavallinus, unable to successfully rod Ms. Wilborn's right femur, performed an open reduction and internal fixation of the right femoral shaft with the stripping of soft tissues of the femur and placement of a 12-hole stainless steel plate. Based on the available medical images, those images indicate that Dr. Cavallinus used a narrow plate instead of a broad plate, which was contraindicated by the size of Tanya Wilborn. Four, that the use of the narrow plate on the right femur is a breach of the standard of care. And five, that on March 15th, in the absence of evidence of any catastrophic event, the narrow plate on Tanya Wilborn's right femur failed, and that on March 15th, it showed a re-fracture. Your report points to at least three expert witnesses who testified to substantially the same thing. So what's the prejudice to you when your witness' testimony is excluded, but the jury heard the same thing from others? Except they heard it in a different manner. They heard, you have a couple days go by and our evidence is struck. I think that that creates a problem for plaintiffs because as your honors have all been involved in jury trials, I don't know whether the jury understood that the entire testimony was struck or just a little part of the testimony. And then when defense experts testify, they're testifying that we knew that these things fail within this period of time. And there's the difference for us. You could have offered a limiting instruction to the jury if you had a problem as to what they were being confused about. Well, except at that time we believed that the door had already closed. Dr. Krieger flew in from Vanderbilt. He was gone. It was two days later when the testimony was struck, and I don't know whether they were confused or they weren't confused, and I don't even know what limiting instruction I would have sought from the court. The court just indicated that she then, to disregard certain testimony that you heard from the doctor. Well, there was nothing in the deposition that said that he never seen or heard of the broad plate failing. There was nothing in your interrogatories that says that specific opinion. I mean, when a defense lawyer is preparing a defense, they have to know exactly what the opinions are. Don't you believe that that's the law? I believe that that's the law, and I believe that that's clearly what they knew. I mean, first of all, it's disingenuous to say our experts knew it, but we didn't know your expert knew it. Second of all, this goes back to whether what 213 requires is every single word your expert is going to say has to be placed in the opinion. No, no, it's not every word, but the question is, this is an opinion, never seen or heard. That opinion wasn't disclosed. I disagree, because I believe that opinion is contained within the 213, specifically that on March 15, 2002, in the absence of any evidence of a catastrophic event, the narrow plate on Ms. Wilborn's femur failed. That's, I mean, it doesn't say within a month, but... Wait, does it say narrow or broad? I'm sorry, it does say narrow, but that was obviously a typo. The whole case was about the broad plate failing. But the opinion is that absent a catastrophic event... He had never seen it. And the testimony was that he had never seen it fail within that month. Absent a catastrophic event. That was what was in the... And that was what was in our 213 written interrogatories. That was, a portion of that was testified. He said he did not see a catastrophic event. Was there any dispute that she subsequently fell within the 30 days? There was a dispute. So there was a dispute that she... Did she say she didn't fall? She said that her leg gave out and then she fell. Okay. Which was different than a fall causing the fracture of the plate. But she did testify that her leg gave out and then she fell. Right. And the second issue is... And then she had to have the surgery. The second surgery where they re-implanted another... I believe they re-implanted another plate. Yes. The second issue, Judge, is the issue with respect to the closing argument. Just going back to that ruling though, we do review it for an abuse of discretion. I understand that. I understand that that is a high burden to reach. But we believe that we have met that based on the evidence and what occurred. With respect to the second issue, which is the fact that during closing argument there were a number of things which were brought to the jury's attention that have no relevance and shouldn't have been brought at all. The least of which is calling me a slick attorney. That is uncalled for and it, especially in this climate, as we've said, it creates an issue in the jury's mind that shouldn't be there. Additionally, the question of when the lawsuit was filed was raised in not only during the case, but argued. The case was filed two years after, clearly within the statute of limitation. That's another attempt to tell the jury, well, something was wrong about when it was filed. And the third one, which combines with the striking of the evidence of our expert is, well, when were you retained and that you didn't even and then the argument is, plaintiff didn't have a theory in this case until three and a half years after it happened. Cumulatively, those are horrible things to say to a jury.  which give rise for a jury to rule on other than competent evidence in this case. I believe that this court has in the last, I think, 60 days, reversed a $12.5 million verdict in Reese v. City of Chicago on what they believed were cumulative errors in a closing argument where it was repeated over and over that the actions, and it was an admitted liability case. Was there a waiver question in that case? There was, I believe, a waiver question at times. Because it was an admission in that case, it was an admitted liability case. So they kept saying that it was willful and want in the conduct of the officer that shot the decedent and the court reversed saying the cumulative effect of those was plain error. And that's what we're saying here. Thank you. Let me ask you a question. This slick lawyer business, do you think that that's appropriate? I don't think it's improper, Your Honor. And I certainly don't think that it rises to the level of plain error, which is what plaintiff's counsel has to do. No, my first question is, is that appropriate conduct, calling somebody a slick lawyer, closing argument? I don't necessarily think that it's inappropriate, no. You don't think it's inappropriate, people should do that? Defense lawyers should call plaintiff lawyers slick? No, Your Honor, I would not recommend that defense counsel call plaintiff's lawyer a slick attorney. What we're really here today about are three issues. You hit on the problems with Plaintiff's 213 disclosures. Rule 213 is mandatory. It's mandatory requirements. And clearly in the 213 written responses that plaintiff filed pre-trial, there's absolutely no mention of timing of the plate failure as a basis for Dr. Krieger's opinions. There's nothing in there about that. The statement to the effect that in the absence of any evidence of a catastrophic event, the narrow plate on Tanya Wilborn's right femur failed. That was in anticipation of the defense that Mrs. Wilborn's activities may have contributed to the plate failure. She testified at her house that the plate failed. She was leaving her house for the first time to get to the bank in the late afternoon. She had to go down several stairs, both inside her unit and outside her unit. She was walking across the parking lot. She was on toe-touch weight-bearing, meaning she wasn't supposed to put any weight on this leg. One of the many defenses in the case was that the failure of this plate was secondary to her placing weight on it and or falling. Plaintiff's disclosure with regard to the absence of a catastrophic event was designed to address that defense. It had nothing to do with the timing of plate failure as a basis for the opinion. Dr. Krieger's deposition was taken. He made it very clear that he had two bases for his opinion that this was a narrow plate. He said he based it upon his review of the x-rays. In his opinion, the x-rays demonstrated that the holes on that plate lined up perfectly horizontally in a straight line. He also said that in looking at the x-rays, he was able to measure the plate. In his opinion, the measurement of that plate was consistent with a narrow plate. He was asked at his deposition, have you given us all of the bases for your opinion? He answered, he had. As the court has already pointed out, this is an abuse of discretion standard. There's no indication that this is an abuse of discretion in making this ruling. Rather, she gave counsel an opportunity overnight to review the 213 responses and the deposition testimony of Dr. Krieger. He was allowed to come in the next day and she said, basically, show me anything. Show me evidence that he said this. And he was unable to and she instructed the jury to disregard one basis for his opinion. Not to disregard his opinion, not to disregard the other bases for his opinion, but one basis for his opinion that was not previously disclosed. That does not rise to the level of abuse of discretion. With respect to the counsel's conduct during closing argument and cross-examination, it's all been waived. Counsel asked one question on cross-examination of Dr. Krieger, sort of as an introductory matter, when this case was filed and when were you retained to review the records? That drew no objection at the time of cross-examination. At the time of closing argument, counsel made reference to it. The date on which Dr. Krieger was hired was not objected to and it's waived. The date on which the case was filed, counsel objected and the court properly instructed the jury that it was closing argument and not evidence. And that's the difficulty with the position the plaintiff is taking here. Waiver is very important here. What counsel has essentially done is not objected at the time of trial. I think it's a very good reason for that as a matter of, and every trial lawyer knows that you have to weigh the impact that your objection is going to have on the jury. You may just be highlighting the substitute matter before them by objecting. I understand that that's his position, but what it denies the trial court the ability to do, when you fail to object, it denies the trial court the ability to rule, to admonish counsel. Some trial judges would have interjected themselves into this case right at that point. During the closing argument? The moment they heard the word slick lawyer. Some trial judges would have admonished the attorney in open court without any prompting. I agree with you. I think some trial judges would have done that. Many trial judges would have. What happened here was counsel didn't give the trial judge an opportunity on an objection to make a ruling, to admonish counsel if that was called for, to instruct the jury if that was called for, but instead waited until the post-trial stage in a post-trial motion and then said, after a result he didn't like, I want you to revisit this, I'm entitled to a new trial for this basis, even though I didn't object and I didn't give you an opportunity to cure it. So that's waived. And waiver is an important argument in this particular case. The trial judge did not have the opportunity because plaintiff elected not to object. So what we're left with is an abusive discretion standard on the 213 point, waiver of the arguments on conduct of counsel. What we have here is a classic jury trial case with experts on both sides. One side says this was a narrow plate. The other side says this was a broad plate. Plaintiff's expert had bases for his opinions. The one basis that was excluded as a 213 objection was in evidence before this jury. It's hard to argue that they were prejudiced by the barring of that basis for the opinion because that basis came in through other witnesses and it was argued extensively in plaintiff's closing argument. So to suggest that plaintiff's verdict was prejudiced by the absence of that basis simply doesn't measure up. So we'd ask you, in light of these things, to affirm a jury's verdict. This was the jury's unique decision. Affirm the jury's verdict and affirm the trial court's order denying plaintiff's post-trial motion. Thank you, counsel. Thank you. Mr. Baker, do you have anything you want to add? Are you really still in this case? I mean, there's nothing in the brief about the hospital about apparent agency or anything like that. He hasn't argued anything. Right, but if it gets reversed, I'm still in the case. Well, I understand. So I didn't submit a special interrogatory asking for a finding on the apparent agency because I was trying to downplay. I understand. I do want to talk about the 213 issue. I think Justice Gordon hit it on the head. When you put together your defense in these cases, you do that based upon what you learned from the disclosure and the plaintiff's attorney's deposition, or the plaintiff's expert's deposition. So their theory basically was very simple. This is a perpendicular femur fracture. You therefore, under the standard of care, have to use a broad plate. Why? Because a broad plate is stronger than a narrow plate. He looked at the x-ray and said, this is a narrow plate. Everything we got from him in his deputant disclosure was case specific. So we prepared our defense along the lines of let's look at all the records. She was billed for a broad plate. The doctor said he put in a broad plate. The nurse says I handed the doctor a broad plate to put in. DCP means synthese, which is a broad plate. So everything specific to the case points to broad plate. That was our defense. So then we get to trial and the new opinion was a broad plate won't fail in the first month. That's not a specific opinion. If that was a disclosed opinion, we have a different defense workup. Now we're doing literature searches to see what the incidence of this is. Maybe we depose some people at the product manufacturer to see what their records are on broad plates failing within that first month. That's the whole idea behind 213 is to prevent surprise. That was a surprise opinion we weren't prepared for to address. We were prepared to address why did the broad plate fail? If you believe we put in a broad plate, why did it fail? Because she abused it. She put too much weight on it. So that's what our experts were prepared to address. That specific plate and that specific patient in these specific circumstances. It was never, we were never prepared to address the general literature. A broad plate won't fail in the first month. So that was truly a new opinion and I think Judge McWilliams ruled in the proper fashion. And then as far as this whole slick thing, would it be any different if he said clever? Because that's the point he was trying to make. I think there's a big difference between the word clever and slick. We have to look at it in the context. Yes, that's a different argument entirely. And the context was, Dr. Kavelini's response on the stand looked uncomfortable, looked untrustworthy, looked unbelievable. So the response to that was, he was being cross-examined very aggressively, very cleverly, and the word slick was used. In that context, the judge didn't feel that that was abusing anybody. Would I have preferred him to say clever? Or he was twisting his words, that's what an artful cross-examiner does? Do you think it's okay to call a lawyer a slick lawyer? Yeah, you think that that's okay. That should be the conduct of a defense lawyer. They should be calling all the plaintiff lawyers slick. In this context, I do believe it's appropriate because you're talking about the cross-examination, how effective it was, and how it made the witness appear uncomfortable. I think the analogy that was used in the closing, and it wasn't my closing, was it's like asking if you stop beating your wife. That's going to make anybody uncomfortable. So his uncomfortableness was when he was being questioned, assume you put in a narrow plate. And he had a real hard time with that line of questioning because he didn't put in a narrow plate. So he called it slick. I don't think that's erroneous. Do you think somebody needed to use the word slick here to win this case? No. And you didn't. So why do it? I didn't. No, I'm saying, so why condone that kind of conduct? Why should anybody condone that kind of conduct? Because different attorneys have different styles. I would have preferred to say it was an aggressive cross-examination. He's doing his job. He's simply making the witness feel uncomfortable by questioning him on impossible answers. Do you think it would have made any difference in this case? Slick? I don't think it made any difference in this case. It's harder to get a reversal, doesn't it? Right. I don't think it made any difference. And I think the trial judge was able to put it in the context of the trial she was in. Would that be a better argument, it didn't make any difference, than to condone and say that's okay? In the context, that's my position. But I don't think it made any difference. And that's all I have to add. Mr. Muslin, the final word. With respect to the 213 issue, if you look at page 10 of our brief, it indicates that counsels clearly knew this was an issue in the case, because during the discovery, Dr. Cavallinus, lawyer, asked Dr. Cregeer, and broad plates utilized to repair a mid-shaft fracture can fail within a month of the original surgical procedure without any negligence on behalf of the surgeon. And Dr. Cregeer says, well, I'd like to break that down into parties. By that I mean I would say that, and then he says let me withdraw the question. And then he goes on to then ask, placing excess weight on a plated femoral fracture within the first month can lead to the damage to the plate. And Dr. Cregeer's answer is, theoretically, yes. I will tell you in practice it's extremely rare. I mean, that is clearly encompasses his response on direct. Secondly, with respect to the slick lawyer thing, why I don't think it's appropriate at all, and I don't think Judge Aspin would believe it's appropriate based on his civility issues. But it's not only the slick lawyer. It's the slick lawyer in the context of, well, you didn't even have a theory for three and a half years, and you didn't file your lawsuit for two years. And I believe that that would have made a difference in this case. It brings issues which should never have been brought into the courtroom, into the jury's minds. And that goes to prejudice, the jury. Other than that, I have nothing else to say. But I do believe it's the prejudice that the court erred. You're right, Justice Cahill, that you said many trial judges would have stopped it right there. And actually in her ruling in the post-trial motion, Judge Williams said, I was very uncomfortable when that was said, and I didn't do anything about it. And I think that that indicates that, I mean, you don't become uncomfortable for something in front of a jury unless you believe it's going to have an impact. And I think in this case it did. Thank you very much for your time. Counsel, thank you all. The case will be taken under advisement. We're going to take just a short recess. Thank you. Recess. Recess. Recess.